VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.        25-AP-437



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

APRIL TERM,   2026

In re X.D. and D.D., Juveniles
(S.D., Mother\*)

    }
    }
    }
    }
    }
    }

APPEALED FROM:

Superior Court, Caledonia Unit,
Family Division
CASE NOS. 22-JV-00354 & 22-JV-00355
Trial Judge: Bonnie J. Badgewick

In the above-entitled cause, the Clerk will enter:

Mother appeals a family division order denying her motion to withdraw her voluntary relinquishment of her parental rights to her children X.D. and D.D.  On appeal, mother argues that the court erred in denying her motion because her relinquishment was contingent on termination of father's parental rights and her motion was filed before his rights were terminated. We affirm.

The record reveals the following facts.  In March 2022, the State filed petitions alleging that X.D. and D.D. were children in need of care or supervision (CHINS).  The State alleged that the children were without proper parental care because father had multiple pending charges for sex offenses with underage victims and that this presented a risk of harm to the children.  The court issued a temporary care order granting custody of the children to the Department for Children and Families (DCF).  In March 2023, parents stipulated that the children were CHINS and the resulting disposition order continued DCF custody.  The court set a goal of reunification with mother by June 2024.

In September 2024, the State filed petitions to terminate the parental rights of mother and father.  At the first day of the termination hearing on February 13, 2025, mother voluntarily relinquished her parental rights, contingent on the termination of father's parental rights.  Mother signed an affidavit and waiver and entered a post-adoption contact agreement (PACA) with the then-foster parents.  The court engaged in a lengthy colloquy with mother, advising mother regarding the PACA that her relinquishment was final even if the foster parents did not adopt the children.  The court also explained to mother the rights that she was giving up and that if the

court accepted her relinquishment, she could not later change her mind. Based on mother's answers, the court found that mother's relinquishment was made knowingly and voluntarily. Mother did not attend the remainder of the termination hearings, which focused on father.

In August 2025, while the issue of father's termination was under advisement, the children's attorney moved to reopen the termination proceedings because DCF had removed the children from their foster home and opened an investigation into foster parents. The court granted the motion and took additional evidence later that month. At this hearing, mother indicated that she wished to withdraw her voluntary relinquishment. She filed a motion to withdraw her voluntary relinquishment, alleging that the children's removal from their foster home was a significant change of circumstances and that mother no longer believed that termination of her rights was in the children's best interests.

The court denied mother's motion, concluding that the fact that the children were not adopted by their then-foster parents had no legal effect on mother's relinquishment. The court cited mother's voluntary waiver of her rights and acknowledgment during her colloquy that her decision to relinquish was final regardless of what happened with the adoption. See 33 V.S.A. § 5124(b)(2)(B). The court also found that allowing mother to withdraw her relinquishment would further delay permanency for the children and contravene one purpose of the juvenile statute. The same day, the court issued an order terminating father's parental rights. Mother appeals.

On appeal, mother argues that the family court erred in denying her motion to withdraw her voluntary relinquishment because it was contingent on termination of father's rights and was therefore not final at the time she filed her motion. This is a different argument than the one raised below. Although mother's motion mentioned that her relinquishment was contingent on termination of father's rights, her main argument to the family court was that allowing her to withdraw her relinquishment was in the children's best interests because the children's permanency options had changed. Therefore, it is not clear that mother has properly preserved this argument for appeal. See In re M.S., 2017 VT 80, ¶ 35, 205 Vt. 429 (explaining that parent must raise issue in family court to properly preserve argument for appeal).

In any event, we conclude that mother has not demonstrated that the court erred in denying her motion to withdraw the relinquishment of her parental rights based on its findings that mother's relinquishment was voluntary and that allowing her to withdraw would delay permanency for the children. During the colloquy with mother, the court explained all the implications of relinquishment, including that mother could not later change her mind. Mother signed an affidavit explaining that she waived the right to collaterally attack the termination of her parental rights and her counsel stated that she explained to mother what this meant. Based on the colloquy, the court accepted her relinquishment as made knowingly and voluntarily. It was clear at the hearing that the sole reservation was that termination of mother's rights was contingent on father's rights being terminated. At no time was mother provided with a general right to withdraw her relinquishment until that time. Moreover, juvenile proceedings are controlled by statute and mother cites no law in support of her argument that her relinquishment was not effective until father's rights had been terminated and she was able to unilaterally rescind her relinquishment up to that time. See In re A.W., 2020 VT 34, ¶ 10, 212 Vt. 225

(explaining that CHINS proceedings are statutory creations and family court has limited power under statute).

      Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Harold E. Eaton, Jr., Associate Justice


_____
Michael P. Drescher, Associate Justice